**UNITED STATES of America**

v.

**Horace W. SIMS and Ralph Howard Freeman.**

**Crim. No. CR 67–59.**

United States District Court
W. D. Tennessee, W. D.

Oct. 1, 1968.

Memorandum Opinion and Order
March 21, 1969.

Thomas L. Robinson, former U. S. Atty. for Western Dist. of Tenn., Memphis, Tenn., for United States.

Lucius E. Burch, Jr., Charles F. Newman, Freeman Marr and Robert Rose, Memphis, Tenn., for Horace W. Sims.

John Heiskell, Memphis, Tenn., for Frederick Hunt Rayner.

J. Richard Cox, Memphis, Tenn., for James Henry Capell.

Vincent Vorder Bruegge, Memphis, Tenn., for Hugh Connell Day.

John Aycock, Memphis, Tenn., for Van Lee Boyd.

Warner Hodges, Memphis, Tenn., for Ralph Howard Freeman.

Cordell Hull Sloan, Memphis, Tenn., for Robert E. Hendrix.

William Walsh, Memphis, Tenn., for George Henry Norman.

Walter Bailey, Jr., Memphis, Tenn., for Willie Albert Johnson.

James Allen, Memphis, Tenn., for William Ivory Claxton.

Clyde West, Memphis, Tenn., for Vester Lee Price.

J. Minor Tait, Jr., Memphis, Tenn., for Klaus Klingenberg.

## MEMORANDUM DECISION AND ORDER ON MOTION FOR NEW TRIAL OF DEFENDANTS SIMS AND FREEMAN

BAILEY BROWN, Chief Judge.

During the course of this trial, it was necessary for this Court to decide whether it was proper to admit in evidence, over the objection of defendants Sims and Freeman, a written confession made by co-defendant Price, which also inculpated them. All of these defendants were on trial. It was the position of counsel for Sims and Freeman that such statement could not properly be admitted in evidence even with a careful instruction to the jury that it was evidence only as to Price and not as to the others.

This trial began on April 29, 1968 and was not completed until June 5, 1968. The decision of the Supreme Court in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, was rendered on May 20, 1968, this Court called the attention of counsel to this decision, and a full argument was had during the trial as to the proper interpretation to be given to the decision. We ultimately concluded that Bruton was not applicable since Price testified and was thereby subject to cross-examination by counsel

for Sims and Freeman. However, because it was possible to maintain the sense of the statement with the name of Freeman (but not Sims) deleted, this was done. The jury was carefully instructed that the statement was evidence only as to Price. The statement was proved as part of the Government's case, Price was cross-examined concerning the statement, and it was passed to the jury.

Defendants Sims and Freeman have moved for a new trial on the ground, among others, that it was improper to admit the statement of Price into evidence under the circumstances just related.

In Bruton, the Supreme Court overruled Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), and held that the admission in evidence of the oral confession of Bruton's co-defendant, Evans, which inculpated Bruton, was reversible error as to Bruton in spite of the fact that the trial court carefully charged the jury that the confession was evidence only as to Evans. The Court placed its decision on the Confrontation Clause (which guarantees the right to cross-examination) of the Sixth Amendment. In its Bruton opinion, the Court emphasizes that Evans did not testify and therefore he was not subject to cross-examination by counsel for Bruton.* We will not lengthen this opinion by quoting all instances in the opinion of the Supreme Court that made it clear, at least to this Court, that it was the failure of Evans, the declarant, to testify and the consequent inability of Bruton's counsel to cross-examine him that required the holding that Bruton had been denied his Sixth Amendment right of confrontation, but many such statements are in the opinion. We, therefore, as stated, considered Bruton inapplicable.

In Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100, decided

---

* The opinion in Bruton does not say, as defendants' counsel argue that it intended to say, that the vice in the proceeding was the inability of Bruton's counsel to cross-examine Evans' out-of-court statement whether or not Evans testified.

Nor did the opinion say that, even if Evans had testified, the admission of his statement would be error as to Bruton because of the practical inability of Bruton's counsel to cross-examine Evans concerning his statement.

June 10, 1968, *Bruton* was made completely retroactive in effect. Moreover, on the same day, the Supreme Court vacated and remanded several criminal convictions for further consideration "in light of Bruton v. United States." 392 U.S. 295, 88 S.Ct. 1922. In three of these cases, Hunt v. Connecticut, 392 U.S. 304, 88 S.Ct. 2063, 20 L.Ed.2d 1110; Bujese v. United States, 392 U.S. 297, 88 S.Ct. 2064, 20 L.Ed.2d 1113; and Serio v. United States, 392 U.S. 305, 88 S.Ct. 2063, 20 L.Ed.2d 1111, the declarant, whose statement had been admitted in evidence, did testify, and therefore he was subject to cross-examination. Moreover, in *Serio*, the name of Serio had been deleted from the statement and Serio's counsel had agreed to the admissibility of the statement upon the deletion.

We can, therefore, only conclude that *Bruton* is applicable even if the declarant, in the instant case Price, has testified, and has been subjected to cross-examination. We therefore grant the motion of Sims and Freeman for a new trial.

It is so ordered.

## MEMORANDUM OPINION AND ORDER

Subsequent to our granting the motions for a new trial of defendants Sims and Freeman on October 1, 1968, the Government moved to vacate and set aside our order. The parties have filed memorandum briefs and we have heard argument on the motion. The purpose of this opinion and order is to dispose of the Government's motion.

In this case, twelve defendants were indicted and charged with conspiracy to violate 18 U.S.C. § 201 (a bribery statute), and some of the defendants, including Sims and Freeman, were also charged with the substantive offense. In general, the Government's contention was that Sims, who was a cotton merchant in Memphis, together with defendant Klingenberg, his bookkeeper, entered into an agreement with other defendants, who were either cotton classers or laborers in the local Department of Agriculture facility, whereby cotton being purchased by Sims from the Government was corruptly downgraded with the result that Sims paid less for the cotton.[1] Five of the defendants pleaded guilty before trial—Capell and Boyd (classers) and Hendrix, Johnson, and Claxton (laborers). Norman, another laborer, pleaded guilty during the trial. Sims, Freeman and Day (both classers), and Price (a laborer) were found guilty and Klingenberg was found not guilty at the end of this six-week jury trial.

It developed at the trial that one of the classers, Russell, who was invited to participate in this illegal activity, so advised the F.B.I. agents. He was asked by them to appear to cooperate in this activity and to report to the F.B.I., which he did, with the result that several of the defendants were under surveillance for some time before the F.B.I. moved in and made arrests. Accordingly, in addition to the testimony of Russell, the Government had the eyewitness testimony of the F.B.I. agents as to the activities of Sims and Freeman, as well as photographs and movies which the agents had made. Moreover, the classers Capell and Boyd testified for the Government with respect to the activities of Sims and Freeman.

Following the jury verdict, those defendants who were convicted moved for a new trial, but Day withdrew his motion and is now serving or has served his sentence. At the time we granted the motion of Sims and Freeman for a new trial, we took under advisement such motion of Price. Sims and Freeman had separate employed counsel and Price had separate appointed counsel.

---

1. Sims was actually buying the cotton through Kempner Cotton Co. of Houston, since he was on the Department's "blacklist." However, the Government does not contend that such arrangement was itself illegal. Rayner, a Kempner official, was also indicted, but a severance was granted without objection and it does not appear that he will be tried.

The motions for a new trial of Sims and Freeman contained several grounds, but the only ground that we determined to have sufficient merit to require discussion, as is shown by our memorandum decision and order granting the motions, was that the admission into evidence of Price's statement was such error as to these defendants as would require a granting of a new trial. It would therefore be proper at this time to set out the circumstances concerning Price's statement.

In the course of putting on its case in chief, the Government offered the signed statement of Price taken by F.B.I. agents. Price's counsel objected, primarily on the ground that Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not complied with. Counsel for Sims and counsel for Freeman objected on the ground that the statement inculpated their clients and that cautionary instructions would not adequately protect them. A lengthy hearing was held outside the presence of the jury. Both the F.B.I. agents who took the statement and Price testified, and counsel for Sims and Freeman participated in the questioning. Although Price had initialed numerous corrections and each page and had written at the end of the statement that he had read it and that it was true and correct, when he testified at this hearing, he denied parts of the statement, equivocated as to other parts, and confirmed still other parts. At the conclusion of this hearing, the Court concluded that Miranda was clearly complied with and overruled Price's objection. We likewise overruled the objections of Sims and Freeman, relying on Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). However, since the name of Freeman appeared in only one place in the statement and could be elided without affecting the sense of the statement as to the participation of Price, we did order Freeman's name elided. This could not, however, be done with respect to Sims, because his name appeared throughout the statement and deletion of his name would have made it meaningless. We then, when the statement was admitted in evidence before the jury, instructed the jury fully, in substance, that it could be considered as evidence only against Price, and this instruction was repeated to the jury from time to time and in the charge to the jury.

Later Price took the stand as a witness in his own behalf. He was cross-examined at length about the statement by Government counsel and again, rather consistently, adopted part, equivocated, and denied part. Counsel for Sims cross-examined Price but counsel for Freeman, though afforded the opportunity, did not do so.

The case of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), was decided May 20, 1968, the second day that Price was on the stand as a witness in his own behalf. When, shortly thereafter, the Court received the slip opinion, we called attention of counsel to it and invited argument. Counsel for Sims and Freeman again moved for a severance or mistrial. We concluded, however, that Bruton was not applicable since Price had taken the stand and was therefore subject to cross-examination. We therefore again denied the motions of Sims and Freeman for a severance or mistrial.

Shortly after the end of this six-week trial, the Supreme Court, on June 10, 1968, decided Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), holding Bruton completely retroactive. Moreover, the Court on the same day, without opinion, vacated and remanded for reconsideration "in the light of" Bruton ten cases. In at least four of these cases, we determined, from the lower court opinion, that the declarant (the maker of the statement) had testified and was therefore subject to cross-examination by counsel for the codefendant who was implicated by the statement. See: United States v. Bujese, 378 F.2d 719 (2nd Cir. 1967), vacated and remanded, 392 U.S. 297, 88 S.Ct. 2064, 20 L.Ed. 2d 1113; Santoro v. United States, 388 F.2d 113 (9th Cir. 1967), vacated and re-

*manded,* 392 U.S. 301, 88 S.Ct. 2054, 20 L.Ed.2d 1106; Connecticut v. Hunt, 154 Conn. 517, 227 A.2d 69 (1967), *vacated and remanded,* 392 U.S. 304, 88 S.Ct. 2063, 20 L.Ed.2d 1110; Serio v. United States, 126 U.S.App.D.C. 297, 377 F.2d 936 (1967), *vacated and remanded,* 392 U.S. 305, 88 S.Ct. 2063, 20 L.Ed.2d 1111.[2]

Only the foregoing decisions by the Supreme Court subsequent to *Bruton* were before this Court at the time we considered the motions for a new trial of Sims and Freeman and heard argument on the applicability of *Bruton* here. We could not assume that the Supreme Court was unaware that the declarants *had* testified in the above cases, although they were vacated and remanded on the basis of an opinion (*Bruton*) in which the Court had emphasized that the declarant had not testified. Therefore, we concluded that the Court must have intended, by such vacations and remands, to announce a broader rule, i. e., that even though the declarant *does* testify, the admission into evidence of his statement inculpating a codefendant is constitutional error as to his codefendant. Accordingly, we granted the motion for a new trial of Sims and Freeman by memorandum decision and order entered October 1, 1968.

Before discussing again the true meaning of *Bruton* with respect to its applicability where the declarant *has* testified, we believe it would be well to consider an alternative legal argument now made by the Government. This argument is that, even if *Bruton* could require a new trial where the declarant *has* testified, it does not do so where the evidence is otherwise very strong in support of the guilt of the codefendant. As pointed out in United States v. Levinson et al., 405 F.2d 971 (6th Cir. 1968) there is language in *Bruton* that supports this legal proposition. The rationale indicated by *Levinson* is that if there is otherwise strong

evidence of the guilt of the declarant's codefendant, the cautionary instructions can reasonably be assumed to have protected the codefendant. However, *Levinson* went on to hold that even if the more stringent Chapman rule (Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)) applies in this context, the evidence in *Levinson* was otherwise so strong that "the admission of such statements, even if it be considered error, was harmless beyond a reasonable doubt." Levinson, 405 F.2d p. 988. In Santoro v. United States, 402 F. 2d 920 (9th Cir. 1968), though holding on vacation and remand from the Supreme Court that *Bruton* was simply inapplicable there because the declarant *had* testified, the Court also indicated that the presence of other strong evidence against Santoro would, under *Bruton*, make a new trial unnecessary.

In the instant case, Sims defended, in general, on the ground that, while he was indeed making payments to Department employees, he was doing so to keep them from corruptly upgrading the cotton he was buying. It was his contention, in other words, that the classers and laborers at the Memphis facility, including Price, were participating in a conspiracy to extort money from him by threatening to corruptly upgrade this cotton unless he paid them off. Freeman defended on the theory that he was not a party to a bribery conspiracy and did not agree to accept and accepted no bribe; he further contended that, while he likewise was not a party to an extortion conspiracy and did not agree to extort and did not extort as contended by Sims, even if such were true he could not be guilty under this indictment since it charged him with bribery, not extortion.

It is the view of this Court that the evidence against Sims and Freeman was, aside from Price's statement, exceedingly strong, and if it be true that *Bruton*

---

2. We cannot be sure, from the opinion below on appeal of Serio's conviction and from the opinion below on appeal of his codefendant's conviction, LaShine v. United States, 126 U.S.App.D.C. 71,

374 F.2d 285 (1967), whether LaShine took the stand in the presence of the jury and was thereby so subject to cross-examination.

does not require a new trial where there is such evidence, this is a proper ground to grant the Government's motion to vacate the order granting new trials. If, on the other hand, the more stringent rule of the *Chapman* case applies here, while it is a close question, we do not believe that we can say that the admission of Price's statement, if error, was harmless beyond a reasonable doubt. Since we read the *Chapman* case to apply here, we cannot grant the Government's motion on this ground. As will be seen, however, we do not believe that *any* error occurred here.

This brings us to the Government's principal contention, which is that, since the declarant (Price) did testify here, *Bruton* simply does not apply. The Government contends that practically all of the post-*Bruton* authorities so hold or so indicate.

Perhaps it would be well to first set out the more recent history of the cases, heretofore cited, in which it appeared that the declarant had testified and yet which were vacated and remanded by the Supreme Court for reconsideration in the light of *Bruton*.

In Connecticut v. Hunt, *supra*, on remand Hunt withdrew his appeal before argument. 251 A.2d 77, Supreme Court of Connecticut, November 13, 1968. In Santoro v. United States, *supra*, on remand the Court held that *Bruton* simply did not apply because the declarant had testified. 402 F.2d 920 (9th Cir. 1968). In Serio v. United States, *supra*, on remand the Court reversed and remanded. However, as we have stated, it is not clear whether the declarant had testified, and the *per curiam* opinion of the District of Columbia Circuit on remand indicates that it *thought* he had *not* testified since it refers to "the lack of opportunity to cross-examine LaShine." 401 F.2d 989 (D.C.Cir. 1968). In United States v. Bujese, *supra*, on remand the Court reversed and remanded. 405 F.2d 888 (2nd Cir., February 3, 1969).

Next, we consider other post-*Bruton* cases in other circuits, in which the appellant seeking reversal was jointly tried with a declarant who had testified.

While, as stated, the Second Circuit reversed and remanded in *Bujese, supra,* it seems to indicate in another opinion that *Bruton* does not apply where the declarant has testified. United States v. Catino, 403 F.2d 491, 496 (2nd Cir. 1968).

We have already pointed out that the Ninth Circuit in *Santoro, supra,* on remand from the Supreme Court held that *Bruton* did not apply since the declarant had testified. It appears that, prior to its opinion on remand in *Santoro*, that Court had, based on *Bruton* and the vacations and remands of the other judgments shortly thereafter, reversed a conviction where the declarant had testified, but then, on motion for rehearing, withdrew from that view. Javor v. United States, 403 F.2d 507, 512 (9th Cir. 1968). The Ninth Circuit has continued to hold that *Bruton* does not apply where the declarant has testified. Rios-Ramirez v. United States, 403 F.2d 1016 (9th Cir. 1968); Parker v. United States, 404 F.2d 1193 (9th Cir. 1968).

The Seventh Circuit opinion in United States v. Guajardo-Melendez, 401 F.2d 35 (7th Cir. 1968) might be construed as holding that *Bruton* may apply even though the declarant has testified, but we believe that the conviction there was reversed because the Court believed that the prosecutor had no legitimate purpose in introducing the declarant's statement against him and that this was done only to prejudice the codefendant. If this opinion be construed as holding that *Bruton* may be applicable where the declarant has testified, it is certainly inconsistent with a later case in that circuit, United States v. Hoffa, 402 F.2d 380, 386–387 (7th Cir. 1968), and was criticized in this respect by the Ninth Circuit in *Santoro, supra,* 402 F.2d at 923.

The Third Circuit in United States v. Boone et al., 401 F.2d 659, 663 (3rd Cir. 1968) held that *Bruton* does not apply where the declarant testifies.

In Calloway v. United States, 399 F.2d 1006, 1008 (D.C.Cir. 1968), the District of Columbia Circuit expressly recognizes that *Bruton* does not apply where the declarant testifies.

This brings us to the decisions of the Sixth Circuit which relate to the question now under consideration.

■ While we recognize that denial of certiorari by the Supreme Court cannot be treated as an expression of opinion on the merits of a case (United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361 (1923)), there are two decisions by our Court of Appeals, one shortly prior to and the other one week after *Bruton*, upon both of which certiorari was denied after *Bruton*, that should be mentioned. These cases are United States v. Hindmarsh, 389 F.2d 137 (6th Cir. 1968) and United States v. Morgan et al., 394 F.2d 973 (6th Cir. 1968). In both of these cases, a statement of a defendant (declarant), which inculpated a codefendant, was admitted in evidence, and the declarant testified. At the trial in each case the question of the propriety of admitting the statements at these joint trials was raised. Our Court of Appeals affirmed the convictions in each case and, as stated, certiorari was denied.

In *Hindmarsh*, certiorari was denied on October 14, 1968, at 393 U.S. 866, 89 S. Ct. 150, 21 L.Ed.2d 134, and on the same day the Supreme Court denied certiorari in two other cases in which the declarant had testified. Courtney v. United States, 390 F.2d 521, 530 (9th Cir. 1968), *cert. denied* 393 U.S. 857, 89 S.Ct. 98, 21 L.Ed. 2d 126 (1968); Dillon v. United States, 391 F.2d 433 (10th Cir. 1968), *cert. denied sub nom.* Duggar v. United States, 393 U.S. 825, 89 S.Ct. 87, 21 L.Ed.2d 96 (1968).

In the *Morgan* case, the Solicitor General, in resisting the petition for certiorari, emphasized that Morgan, the declarant, had testified and argued that therefore *Bruton* did not apply. In his brief, he stated at pp. 7–8:

"2. Morgan's statement, which named DeFoe as a receiver of the sto-len bonds (Tr. 272), was received in evidence with an instruction that it was to be considered solely against Morgan (Tr. 262). After it had been read into evidence, Morgan took the witness stand and denied the truth of the contents of the statement (Tr. 775–790). DeFoe's counsel chose not to cross-examine Morgan (Tr. 797).

"In Bruton v. United States, 391 U.S. 123 [88 S.Ct. 1620], this court ruled that limiting instructions were not sufficient to remove the prejudice caused by the introduction of a co-defendant's confession where the co-defendant was not subject to cross-examination and, therefore, the admission of such a statement at a joint trial violated Bruton's right to confront the witnesses against him. We submit that the present case is distinguishable from *Bruton*, and the record here shows that DeFoe was not prejudiced by the introduction of Morgan's confession. Morgan's statement injected no new information into the government's case against DeFoe, since both Boots and Moore testified that DeFoe had possession of the stolen bonds and tried to get them to sell the bonds. Moreover, in this case DeFoe was not denied the right to confrontation under the Sixth Amendment, since Morgan did testify in his own defense and could have been cross-examined by DeFoe's counsel."

Certiorari was denied November 12, 1968. 393 U.S. 942, 89 S.Ct. 310, 21 L.Ed.2d 279 (1968).

In United States v. Levinson, *supra*, heretofore discussed, even where declarant did not testify, our Court of Appeals held that *Bruton* did not make a new trial necessary because of the strength of the evidence against the codefendant who was inculpated by the declarant's statement.

Lastly, we must consider the recent decision of our Court of Appeals in Townsend and Terry v. Henderson, 405 F.2d 324 (6th Cir. 1968). Sims and Freeman rely mainly on this decision. There our

Court of Appeals held that, under the circumstances of that case, Townsend had been deprived of his Sixth and Fourteenth Amendment right to confrontation, even though Terry, whose inculpating statement was admitted in evidence, testified at the trial. The Court said that *Bruton* applied in spite of the fact that Terry had testified, because Terry had denied his statement and therefore, the Court thought, Townsend had been deprived of an opportunity to effectively cross-examine Terry concerning the statement.

At the outset, it should be pointed out that, so far as Townsend was concerned, this case presented a hard one because the Court already had determined that Terry's statement should not have been admitted against him in the first place since it was obtained by threats of punishment and that therefore Terry was entitled to a new trial. To grant the confessor a new trial but to affirm the conviction of the confessor's codefendant, obviously offends that indefinable sense of fair play that any court has. The situation with respect to the declarant's statement was essentially the same in the *Bruton* case: the statement had been held to be inadmissible against Evans. In the instant case, on the other hand, it was completely clear to us that Price's statement had been freely and voluntarily made and that *Miranda* had been in all respects complied with.

As stated, our Court of Appeals indicated its belief that *Bruton* should apply even though Terry, the declarant, testified because he denied his statement on the witness stand. Here, on the other hand, the record will reflect that Price adopted a large part of his statement, though he did deny a part of it and equivocated as to other parts. There is, then, a substantial factual difference between the instant case and the *Townsend* case. Furthermore, for completeness, it should be pointed out that in both the *Hindmarsh* and *Morgan* cases in this Circuit, *supra*, the declarant repudiated his statement when he testified, and this was likewise true in *Dillon (Duggar)*, *supra*.

■ Moreover, in the *Townsend* case the Court indicated that the case against Townsend was a weak one, implying that the result might have been different had the evidence against him otherwise been strong. It characterized Terry's confession as being "of crucial significance in the case against his co-defendant Townsend." Here the case against Sims and Freeman, as we have said, was very strong aside from consideration of Price's statement, and in our opinion, Price's statement was not "of crucial significance" against either Sims or Freeman.

We therefore conclude that, contrary to the contention of Sims and Freeman, *Townsend* does not control the question presented here, and further conclude that neither the decisions in this circuit nor in the other circuits so construe *Bruton* as would require a new trial for Sims and Freeman under the circumstances presented here.

■ In closing, we point out that a separate argument made by counsel for Freeman makes clear still another problem that would be presented (in addition to the more obvious ones) if it were held that *Bruton* applies even though the declarant testifies. He argued that where, during the trial, counsel for another defendant cross-examined a Government witness about an extra-judicial statement of the witness that inculpated Freeman, such amounted to a denial to Freeman of the right to confrontation even though the Government witness could be cross-examined by Freeman's counsel. And, of course, statements of Government witnesses can readily be obtained under the Jencks statute (18 U.S.C. § 3500) as soon as they have testified on direct examination. In determining whether there should be separate trials, it would be difficult to anticipate such contingencies as that presented by counsel's argument.

We therefore conclude that the Government's motion to vacate and set aside the order granting a new trial to Sims and Freeman should be granted. It is so ordered.